**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

———————————————————

ELIZABETH H.,

                                        Plaintiff,

          v.
                                                            No. 3:19-CV-1020
COMMISSIONER OF SOCIAL SECURITY,                            (CFH)

                                        Defendant.

———————————————————

**APPEARANCES:**                            **OF COUNSEL:**

Elizabeth H.
P.O. Box 365
Grand Gorge, New York 12434
Plaintiff pro se

Social Security Administration              JUNE L. BYUN, ESQ.
Office of Regional General Counsel,
Region II
26 Federal Plaza, Room 3904
New York, New York 10278
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

          Plaintiff pro se Elizabeth H.[2] brings this action pursuant to 43 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("the

Commissioner") denying her application for disability insurance benefits.  See Dkt. No. 1

---

[1]  Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. §
636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 4.

[2]  In accordance with guidance from the Committee on Court Administration and Case Management of
the Judicial Conference of the United States, which was adopted by the Northern District of New York in
2018 to better protect personal and medical information of non-governmental parties, this Memorandum-
Decision and Order will identify plaintiff by first name and last initial.

("Compl.").  Plaintiff moves for reversal and remand for further administrative proceedings, and the Commissioner cross moves for a judgment on the pleadings.  See Dkt. Nos. 12, 14.  For the following reasons, the Commissioner's determination is affirmed.

## I. Background

### A. Factual Background

Plaintiff is a high school graduate and has past relevant work as a nurse's assistant and a food services manager.  See T. at 67-69.[3]  Generally, plaintiff's alleged disability consists of bilateral carpal tunnel syndrome and osteoarthritis, depression, and anxiety.  See id. at 37, 120.  Plaintiff is right-handed.  See id. at 14.

### B. Procedural Background

On May 9, 2016, plaintiff protectively filed a Title II application for disability insurance benefits.  See T. at 30, 223.  On May 25, 2016, plaintiff protectively filed a Title XVI application for supplemental security income.  See id. at 30.  In both applications, plaintiff alleged a disability onset date of December 16, 2014.  See id. at 30, 223.  The applications were denied on August 30, 2016.  See id. at 145.  Plaintiff requested a hearing, see id. at 161, and a hearing was held on May 17, 2018, before Administrative Law Judge ("ALJ") Carl E. Stephen.  See id. at 62-83.[4]  On August 10,

---

[3]  "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Dkt. No. 10-1.  Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

[4]  Although plaintiff is now proceeding pro se, she was represented by counsel at the hearing and in making her request for review of the ALJ's decision at the Appeals Council.  See T. at 25, 62.

2018, the ALJ rendered an unfavorable decision.  See id. at 27.  On June 19, 2019, the

Appeals Council ("AC") denied plaintiff's request for review, making the ALJ's decision

the final determination of the Commissioner.  See id. at 1.  Plaintiff commenced this

action on August 22, 2019.  See Compl.


## II. Applicable Law

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not

determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g),

1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.

1990).  Rather, the Commissioner's determination will only be reversed if the correct

legal standards were not applied, or it was not supported by substantial evidence.  See

Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464,

467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in

the record one can find "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004)

(citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).

The substantial evidence standard is "a very deferential standard of review

 . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable

factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin., Comm'r, 683

F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted).  Where there is

reasonable doubt as to whether the Commissioner applied the proper legal standards,

the decision should not be affirmed even though the ultimate conclusion is arguably

supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148

(N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal

standards were applied and the ALJ's finding is supported by substantial evidence, such

finding must be sustained "even where substantial evidence may support the plaintiff's

position and despite that the court's independent analysis of the evidence may differ

from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)

(citation omitted).


### B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . .

benefit . . . ."  42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or

mental impairment . . . which has lasted or can be expected to last for a continuous

period of not less than 12 months."  Id. § 423(d)(1)(A).  A medically-determinable

impairment is an affliction that is so severe that it renders an individual unable to

continue with his or her previous work or any other employment that may be available to

him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A).

Such an impairment must be supported by "medically acceptable clinical and laboratory

diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is

"based on objective medical facts, diagnoses[,] or medical opinions inferable from [the]

facts, subjective complaints of pain or disability, and educational background, age, and

work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3

(S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir.

1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  Id. (citing Berry, 675 F.2d at 467).

### III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff had not engaged in substantial gainful activity since December 16, 2014, the alleged disability onset date.  <u>See</u> T. at 33.  At step two, the ALJ found that plaintiff had the following severe impairments, which significantly limit her ability to perform basic work activities: bilateral hand disorders.  <u>See id.</u>  The ALJ found plaintiff's depression and anxiety to be non-severe.  <u>See id.</u>  At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  <u>See id.</u> at 36.  Before reaching step four, the ALJ concluded that plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except can frequently handle and finger with bilateral upper extremities."  <u>Id.</u>  At step five, the ALJ determined that plaintiff is capable of performing past relevant work as a food service manager because performing such work was not precluded by her residual functional capacity ("RFC").  <u>See id.</u> at 41. Thus, the ALJ determined that, as of December 16, 2014, through the date of the decision, plaintiff has not been under a disability within the meaning of the Social Security Act.  <u>See id.</u> at 42.

### IV. The Parties' Arguments

Plaintiff, now proceeding <u>pro se</u>, argues: (1) that the AC erred by not remanding the matter to the ALJ based on "new and material evidence" she submitted; and (2) the

ALJ's RFC determination is not supported by substantial evidence.  Dkt. No. 12 at 1.[5]

Liberally construing plaintiff's arguments, as the Court must,[6] she contends that her

newly submitted evidence contradicts the ALJ's findings concerning the intensity and

persistence of her bilateral hand pain.  See id. at 3-4.  Further, plaintiff avers that the

ALJ's RFC determination is not supported by substantial evidence because it is not

supported by the medical opinion evidence, including the newly submitted opinion of Dr.

Paul Llobet ("Dr. Llobet"), plaintiff's primary care physician, and Physician's Assistant

Moore ("PA Moore"), a treating PA, which the ALJ considered in rendering her

determination.  See id. at 4-5.

The Commissioner argues that, contrary to plaintiff's contentions, the ALJ's

determination is supported by substantial evidence.  See Dkt. No. 14 at 7.  In particular,

the Commissioner contends that the ALJ appropriately considered and weighed the

_____

[5]  The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF at the headers of the page, not to the pagination in the bottom right-hand corner of the administrative transcript.

[6]  Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest.  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted); Abbas v. Colvin, No. 6:14-CV-0959 (GTS), 2015 WL 4078234, at *2 n.2 (N.D.N.Y. July 6, 2015) (applying special solicitude to the pro se plaintiff's arguments in his social security appeal).

relevant medical opinion evidence, medical records, and plaintiff's daily activities, and reached an RFC determination supported by substantial evidence.  See id. at 7-14. Moreover, the Commissioner argues that the new evidence plaintiff submitted to the AC does not alter the weight of the evidence such that it would likely change the outcome of the case.  See id. at 14.

## V. Discussion[7]

### A. Scope of Review of New Evidence

As a general matter, "[t]he Appeals Council is obligated to consider 'new [and] material' evidence that 'relates to the period on or before the date of the administrative law judge hearing decision.'"  Patterson v. Colvin, 24 F. Supp. 3d 356, 372 (S.D.N.Y. 2014) (quoting 20 C.F.R. § 404.970(b)).  New evidence is "material" if it is: "'(1) relevant to the claimant's condition during the time period for which benefits were denied and (2) probative.'"  Stratton v. Colvin, 51 F. Supp. 3d 212, 218 (N.D.N.Y. 2014) (quoting Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004)).  However, "[t]he Second Circuit [has] clearly stated that when new evidence is submitted to the AC and the AC denies review, the reviewing court's role is to review the entire administrative record, including the new evidence, and determine whether substantial evidence supported the Commissioner's final decision."  Canady v. Comm'r of Soc. Sec., 1:17-CV-0367 (GTS/WBC), 2017 WL 5496071, at *10 (N.D.N.Y. Oct. 4, 2017) (citing Lesterhuis v. Colvin, 805 F.3d 83, 87 (2d Cir. 2015) ("[N]ew evidence submitted to the [AC] following the ALJ's decision becomes part of the administrative record for judicial review when

---

[7]  All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

the [AC] denies review of the ALJ's decision." (internal quotation marks and citations omitted))), <u>report & recommendation adopted</u>, 1:17-CV-0367 (GTS/WBC), 2017 WL 5484663 (N.D.N.Y. Nov. 14, 2017).  Under those circumstances, the question becomes "whether the new evidence altered the weight of the evidence before the ALJ so dramatically as to require the AC to take the case."  <u>Canady</u>, 2017 WL 5496071, at *11; <u>see Patterson</u>, 24 F. Supp. 3d at 373 ("[T]his requirement has been interpreted to mean that there must be a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." (internal quotation marks and citation omitted)).

Here, in seeking review of the ALJ's hearing decision, plaintiff submitted medical records from various providers, including Dr. Llobet's medical source statement.  <u>See</u> T. at 2.  In denying review of the ALJ's decision, the AC acknowledged plaintiff's submission new evidence.  <u>See id.</u> at 2.  However, the AC concluded that the new evidence either "d[id] not show a reasonable probability [of] chan[ing] the outcome of the [ALJ's] decision," or "d[id] not relate to the period at issue" and, "[t]herefore, . . . d[id] not affect the decision about whether [plaintiff] w[as] disabled beginning on or before August 10, 2018," the date of the ALJ's decision.  <u>Id.</u>  Moreover, the AC notified plaintiff that "[i]f [she] want[ed the Commissioner] to consider whether [she] was disabled after August 10, 2018, [she] need[ed] to apply again."  <u>Id.</u>

Plaintiff's new evidence became part of the administrative record when plaintiff submitted it to the AC and the AC denied review.  <u>See</u> <u>Canady</u>, 2017 WL 5496071, at *10.  Accordingly, the Court's scope of review is of this matter will be to determine "whether substantial evidence supports the ALJ's decision, when the new evidence is

included in the administrative record" and "the Court will not address plaintiff's arguments regarding the [AC]'s alleged errors in considering the new evidence." Ryder v. Colvin, No. 1:15-CV-00241 (MAT), 2015 WL 9077628, at *4 (W.D.N.Y. Dec. 16, 2015).

## B. Analysis

### 1. The ALJ's RFC Determination

RFC is defined as "'what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (citation omitted)).   "In making a [RFC] determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." Pardee, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" Hendrickson v. Astrue, 5:11-CV-927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *6 (S.S.A. Jan. 1, 1985)).   The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of Social Security disability.  See Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, No. 5:14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted and citations). "An ALJ should consider all medical opinions received regarding the claimant."  Reider v. Colvin, No. 15-CV-6517P (MWP), 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (internal quotation marks and citation omitted)); see also SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996) (explaining that "[t]he RFC assessment must be based on all of the relevant evidence in the case record.").

Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence because it contradicts the medical opinion of PA Moore, which was before the ALJ when he rendered his decision, and the opinion of Dr. Llobet, which was submitted for the first time to the AC.  See Dkt. No. 12 at 4-5.  In particular, plaintiff argues that Dr. Llobet's and PA Moore's opinions establish that plaintiff is unable to perform light work as determined by the ALJ because those opinions identify limitations reducing her ability to lift to, at most, only occasionally up to 10 lbs. and her ability to grasp, turn, or twist to, at most, 20% of an eight-hour workday.  See id. at 4.  The Court disagrees.

As stated above, the ALJ determined that plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except can frequently handle and finger with bilateral upper extremities."  T. at 36.  The regulations define "[l]ight work" as work that

> involves lifting no more than 20 pounds at a time with
> <u>frequent</u> lifting or carrying of objects weighing up to 10
> pounds.  Even though the weight lifted may be very little, a
> job is in this category when it requires a good deal of walking
> or standing, or when it involves sitting most of the time with
> some pushing and pulling of arm or leg controls.  To be
> considered capable of performing a full or wide range of light
> work, you must have the ability to do substantially all of
> these activities.  If someone can do light work, we determine
> that he or she can also do sedentary work, unless there are
> additional limiting factors such as loss of fine dexterity or
> inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b) (emphasis added).  "Frequent" is defined as "occurring from one-third to two-thirds of the time" in the course of an eight-hour workday, and "occasional" is defined as "occurring from very little up to one-third of the time."  SSR 83-10, 1983 WL 31251, at *5, 6 (S.S.A. Jan. 1, 1983).

In reaching his RFC determination, the ALJ afforded "great weight" to the opinion of consultative medical examiner Dr. Puri.  T. at 40.  Dr. Puri conducted an internal medical examination of plaintiff on August 16, 2016.  <u>See</u> T. at 455-57.  As relevant here, Dr. Puri noted that plaintiff had a "[f]ull ROM of shoulders, elbows, forearms, and wrists bilaterally" and that her "[j]oints [we]re stable and nontender except for bilateral hip and hand tenderness on palpitation and movement."  <u>Id.</u> at 457.  Dr. Puri further observed that plaintiff's deep tendon reflexes were "physiological and equal in upper and lower extremities" and that plaintiff had "[n]o sensory defects" and that her "[s]trength [was] 5/5 in the upper and lower extremities."  <u>Id.</u>  In addition, Dr. Puri

concluded that plaintiff's "[h]and and finger dexterity [was] intact"; her "[g]rip strength show[ed] some give-way strength to 4+/5 secondary to local tenderness"; and that her "[i]ndividual muscle strength [wa]s stronger."  Id.  Dr. Puri diagnosed plaintiff with "[m]ultiple joint pains secondary to degenerative joint disease and post[-bilateral thumb] surgery [with tendon repairs]."  Id.  Based on her exam findings, Dr. Puri provided the following medical source statement:

> [Plaintiff] did not have any objective limitations to
> communicate or fine motor or gross motor activity.  There
> were no objective limitations to her gait or to her activities of
> daily living on examination today.  It is recommended that
> she not lift heavy weights and be seen by a psychologist.
> [Plaintiff] has mild limitations to gripping.

Id. at 457-48.

As an initial matter, Dr. Puri's opinion that plaintiff "has mild limitations to gripping" supports the ALJ's RFC determination that she is capable of performing a full range of light work and can frequently handle and finger.  T. at 458.  Indeed, "[c]ourts within this Circuit have held that opinions of similar mild to moderate limitations support RFC findings that claimants are capable of light work."  Gerry v. Berryhill, No. 17-CV-7371 (JS), 2019 WL 955157, at *3 (E.D.N.Y. Feb. 26, 2019) (internal quotation marks and citation omitted); see Bates v. Berryhill, No. 17-CV-3311 (ADS), 2018 WL 2198763, at *11 (E.D.N.Y. May 14, 2018) (holding that "mild to moderate limitation for sitting, and a moderate limitation in standing, bending, and lifting or carrying on a continuing basis" supported the ALJ's RFC determination that the claimant could perform light work); Moore v. Comm'r of Soc. Sec., No. 1:16-CV-270 (DJS), 2017 WL 1323460, at *8 (N.D.N.Y. Apr. 10, 2017) ("[M]oderate limitations for sitting, standing, walking, bending, climbing stairs, and lifting or carrying heavy objects   . . . is consistent with light work.");

Gurney v. Colvin, No. 14-CV-688S (WMS), 2016 WL 805405, at *3 (W.D.N.Y. 2016) (finding that moderate limitations with respect to "repetitive heavy lifting, bending, reaching, pushing, pulling or carrying . . . are frequently found to be consistent with an RFC for a full range of light work"). Thus, Dr. Puri's opinion that plaintiff should refrain from lifting "heavy weights" and had "mild limitations to gripping" is substantial evidence in support of the ALJ's RFC determination that plaintiff can perform light work.

Further, although "the Second Circuit has held that, when compiling an RFC from the record, an ALJ may not rely on opinions that employ the terms 'moderate' and 'mild' absent additional information," Dr. Puri's use of such terminology in the present matter does not render the ALJ's RFC determination erroneous. Craig R. v. Berryhill, No. 6:18-CV-0630 (LEK), 2019 WL 4415531, at *5 (N.D.N.Y. Sept. 16, 2019) (citing Curry v. Apfel, 209. F.3d 117, 123 (2d Cir. 2000), superseded by regulation on other grounds by 20 C.F.R. § 404.1560(c)(2)); see also Garretto v. Colvin, No. 15-CV-8734 (HBP), 2017 WL 1131906, at *21 (S.D.N.Y. Mar. 27, 2017) (holding that the consulting physician's "use of the word 'moderate' [wa]s vague and provide[d] no support for the ALJ's conclusion that [the] plaintiff [could] engage in [the relevant] activities for six hours out of an eight hour day."). "On the other hand," this Court has explained that "use of terms like 'mild' and 'moderate' has been held to pass substantial evidence muster when medical evidence shows relatively little physical impairment." Anderson v. Colvin, No. 5:12-CV-1008 (GLS/ESH), 2013 WL 5939665, at *9 (N.D.N.Y. Nov. 5, 2013) (citing Waldau v. Astrue, No. 5:11-CV-925 (GLS), 2012 WL 6681262, at *4 (N.D.N.Y. Dec.21, 2003)). For instance, in Waldau, the Court concluded that the consultative medical examiner's opinion that the plaintiff had a "[m]ild to moderate limitation lifting, carrying,

14

and pulling" was not so vague as to render it useless for purposes of determining the plaintiff's RFC because the consultative examiner's "ultimate diagnosis [wa]s well supported by his extensive examination," including that the plaintiff "had full range of motion in his shoulders, elbows, forearms, and fingers bilaterally," and "a full range of motion and 5/5 muscle strength in his left wrist but a limited range of motion and some weakness in his right wrist."  Waldau, 2012 WL 6681262, at *4.  "Thus," the Court concluded, the consultative medical examiner's opinion "[wa]s not in any way conclusory."  Id.

Here, although Dr. Puri's medical source statement used the term "mild" to characterize plaintiff's gripping limitations without specifically defining that term, similar to the consultative examiner in Waldau, Dr. Puri performed an extensive examination of plaintiff and rendered a non-conclusory opinion that was supported by detailed findings. T. at 458; see Waldau, 2012 WL 6681262, at *4.  Indeed, as in Waldau, Dr. Puri noted that plaintiff had a full ROM in her shoulders, elbows, forearms, and wrists bilaterally; 5/5 strength in her upper and lower extremities; intact hand and finger dexterity, but "some give-way" in her grip strength, which she opined was "4+/5."  T. at 457; see Waldau, 2012 WL 6681262, at *4.  Thus, Dr. Puri's conclusion that plaintiff had "mild limitations to gripping" was no so vague as to be useless for determining plaintiff's RFC. Id. at 458.

Further, the present matter is distinguishable from cases in which a medical source that used the terms "mild" or "moderate" to describe a claimant's physical limitations has been held too vague to support an RFC determination in the absence of additional information.  Craig R., 2019 WL 4415531, at *5 (citing Curry, 209. F.3d at

123).  For instance, in <u>Provencher v. Comm'r of Soc. Sec.</u>, this Court remanded to the ALJ for further administrative proceedings where the ALJ's determination that the plaintiff had the RFC to perform light work with certain limitations based on a consultative medical examiner's medical source statement, which opined that the plaintiff had "'mild' limitations in bending, stooping, and kneeling[] and . . . should not lift 'heavy' weights."  <u>Provencher v. Comm'r of Soc. Sec.</u>, No. 6:15-CV-1287 (GTS), 2017 WL 56702, at *6 (N.D.N.Y. Jan. 5, 2017).  However, in <u>Provencher</u>, the ALJ declined to give weight to a treating physician's medical source statement, which opined that the plaintiff had more significant limitations than those stated by the consultative examiner on the basis that "the [treating physician's] opinion was at odds with objective evidence and examination notes in the records."   <u>Id.</u>  In concluding that the ALJ's RFC determination was not supported by substantial evidence, the Court observed that the ALJ "failed to cite" any record evidence that contradicted the treating source's opinion. <u>Id.</u> at *5.  Further, the Court noted that the consultative examiner's opinion was "somewhat vague" because of her use of the term "mild," which was not defined and the meaning of which was not evident from the examination report."   <u>Id.</u>

Here, although Dr. Puri did not explicitly define the terms "mild" in her medical source statement, "the meaning of the term was . . . evident from the examination report."  <u>Provencher</u>, 2017 WL 56702, at *5.  Indeed, Dr. Puri made clear that plaintiff's grip strength was only slightly reduced from full (i.e. "some give-way") by quantifying her grip strength at "4+/5," and noting that plaintiff had 5/5 strength in her upper extremities with full ROM.  T. at 457.  Accordingly, the present matter is distinguishable from

Provencher and the ALJ's reliance on Dr. Puri's medical source statement in reaching the RFC determination was appropriate.  See Waldau, 2012 WL 6681262, at *4.

Moreover, this case is further distinguishable from cases like Provencher because the ALJ's RFC determination is adequately supported by an abundance of medical evidence contained in the record, including medical treatment notes and diagnostic testing records—which the ALJ explicitly cited to in his RFC analysis—and which establish "relatively little physical impairment."  Anderson, 2013 WL 5939665, at *9; see T. at 38-40; cf. Provencher, 2017 WL 56702, at *5.  For instance, the ALJ cited medical records, which observe that plaintiff sought treatment as far back as 2012 for hand pain, and underwent several surgeries including arthroplasty on her right and left thumbs in 2012 and 2015, respectfully; bilateral wrist surgeries on her right and left wrists in 2012 and 2014, respectfully; and surgery to repair a boxer's fracture in 2017 after plaintiff punched a wall and broke her right pinky finger.  See T. at 363, 373, 375, 425, 472, 479.  However, the ALJ also cited extensively to medical records documenting plaintiff's subjective complaints of loss of grip strength and bilateral hand pain that was unsubstantiated by clinical evaluations and diagnostic testing.  See id. at 38-39.  For instance, the ALJ cited to Dr. Llobet's February 2, 2016 office visit note, which explained that plaintiff "complain[ed] of bilateral hand pain" and "no strength in hands, dropping objects in her hands."  Id. at 376.  Dr. Llobet diagnosed plaintiff with "[c]arpal tunnel syndrome, unspecified upper limb," ordered x-rays of plaintiff's wrists, and referred plaintiff for physical therapy.  Id. at 378.  Upon review of the x-rays, Dr. Llobet noted "[n]o fracture or dislocation" in either wrist, and concluded that plaintiff had "[m]ild bilateral osteoarthritis."  Id. at 393.  Further, the ALJ cited medical records

indicating that, despite complaints of pain, plaintiff did not seek treatment or failed to follow through with recommended treatments, including a Margaretteville Hospital Discharge Note from March 17, 2018, which stated that plaintiff was discharged from physical therapy for failure to attend for over a month; that her last date of attendance was February 18, 2016, when plaintiff informed her physical therapist after four treatment sessions that "she . . . did not think physical therapy was helping." Id. at 378. Plaintiff discontinued physical therapy despite "demonstrat[ing] good rehab potential." Id. at 399.

The ALJ also cited the plaintiff's treatment records from Dr. Huntsman at Bassett Healthcare Network. See T. at 39. Dr. Huntsman's April 13, 2016 progress note stated plaintiff's subjective complaint of "continued pain in [her] left hand" and that the pain could be "reproduc[ed] with palmar supination and pronation of her wrist," but noted that the x-rays performed following her 2015 thumb surgery

> show[ed] absolutely no real ulnar radial disease and she has complete stability in radial ulnar joint. The source of the pain is unclear based on her x-rays and interestingly enough . . . any other range of motion has no symptoms whatsoever. At this point, it is unclear the source of her pain based on the normal x-rays.

Id. at 441. Further, Dr. Huntsman noted

> The only other potential mild abnormality is little bit of a joint collapse between the radioscaphoid joint, but yet, this joint does not seem to have any tenderness and provocative motions does not seem to aggravate it. Again, the only thing that seems to cause trouble is pronation and supination, which is not supported by her x-rays.

Id. Dr. Huntsman's subsequent progress notes from May and December 2016, likewise observe that a "[r]eview of [plaintiff's] x-rays is curious in that position and everything

seems good, but there looks like there is developing arthritis between the scaphoid and trapezoid that may be some of her symptomology" and

> X-rays show really no substantial abnormalities.  MRI was likewise unremarkable.  She complains of pain at the base of her metacarpal on the ulnar aspect of this.  There is no evidence on studies that would suggest any type of progressive arthritic disease or any impingement.  At this point, I am not clear what to offer her because her pain is an anatomically challenging area where there are no particular structures that I am clear on which would be causing her symptoms.

Id. at 442, 630.  The ALJ also observed that Dr. Huntsman administered a steroid injection, which "provided some modest relief of [plaintiff's] symptoms."  Id. at 442, 611; see id. at 38.

Further, the ALJ cited the treatment notes of Dr. Andrew Reis of Bassett Healthcare Network, whom plaintiff saw in July and August 2016.  See T. at 636, 642. Dr. Reis noted that plaintiff's "situation [wa]s quite puzzling as she has pain bilaterally which she states is nearly identical however only has x-ray findings for scapholunate trapezoid arthritis on the right."  Id. at 642.  Dr. Reis referred plaintiff for an MRI "of the left to look for underlying scapholunate trapezoid arthritis which [wa]s not demonstrated on her plain film."  Id.  At plaintiff's follow up visit in August 2016, Dr. Reis noted, "[u]nfortunately, [plaintiff's MRI findings] show[ed] little to explain her ongoing bilateral pain."  Id. at 636.  In addition, Dr. Reis observed that plaintiff had "what appear[ed] to be scapholunate trapezial arthritis on the contralateral [right] hand but this was not verified by the MRI on the left hand" and he "ha[d] little to offer her surgically given her lack of response to the corticosteroid injection as well as a lack of findings on the MRI scan." Id.

Moreover, the ALJ cited Dr. Huntsman's February 8, 2017 progress note, which indicated that plaintiff expressed "continued pain of [her] left thumb and left wrist."  T. at 625.  Dr. Huntsman noted that plaintiff "sa[id] she d[id] not have pain all of the time, but rather when she makes certain movements" and "highlight[ed] that her pain [wa]s heightened by doing dishes, lifting heavy items, and opening jars."  Id.  She further explained that she had "sharp pains but d[id] not experience prolonged soreness."  Id.  Dr. Huntsman reflected that plaintiff's "exam has continued to be a little bit difficult to discern" because plaintiff had "good motion," a "little bit of discomfort in most of the positions of the hand" with "no tenderness [or] instability."  Id.

In addition, the ALJ cited plaintiff's March 23, 2017 progress note from plaintiff's pain management specialist at Bassett Healthcare Network, Dr. Brian White.  See T. at 38-39.  Dr. White observed plaintiff's subjective complaints that, on a daily basis, her "[p]ain ranges from a 2 to a 7/10 in intensity," and is greater in her left hand than in her right hand.  Id. at 611.  Dr. White provided the following impression: "Grossly normal strength throughout the bilateral upper extremities including grip strength, finger abduction and thumb opposition.  Wrist flexion and extension, elbow flexion and extension, forearm pronation and shoulder abduction.  There is some pain with resisted pronation.  This pain is present on the dorsal aspect of the wrist."  Id. at 614.  Dr. White also noted that plaintiff's August 2016 MRI showed some "increased fluids sensitive signal" in her left hand.  Id. at 611.  Finally, the ALJ cited plaintiff's pre- and post-surgery June 7, 2017 medical records from Bassett Healthcare Network, which recounted that plaintiff underwent open reduction and internal flexion ("ORIF") with pinning of the fifth

metacarpal to repair a boxer's fracture to her right hand after plaintiff punched a wall. See T. 39, 469.

Thus, as the foregoing demonstrates, plaintiff's treatment notes established that she had normal ROM in her wrists and normal grip strength. See T. at 614, 625. Further, plaintiff's diagnostic tests, including x-ray and MRI studies, established that she suffered from mild arthritis and "carpal tunnel syndrome, unspecified upper limb," but did not indicate that she was limited in her ability to perform the requirements of light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b). Id. at 378; see id. at 399. Thus, the "medical evidence show[ed] relatively little physical impairment." Anderson, 2013 WL 5939665, at *9. Accordingly, the Court concludes that the ALJ properly relied on Dr. Puri's medical source statement, which was corroborated by the medical evidence of record, and arrived at an RFC determination that was supported by substantial evidence.

### 2. Weight Afforded PA Moore's Opinion

Insofar as plaintiff's brief may be construed as arguing that the ALJ failed to afford PA Moore's opinion more weight, the Court concludes that the ALJ's determination is supported by substantial evidence. For claims filed before March 27, 2017, such as in the present case, "medical opinions" are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his or her] symptoms, diagnosis, prognosis, what [he or she] can still do despite impairment(s), and [his or her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1) (emphasis added). "Acceptable medical

sources" include licensed physicians (medical or osteopathic doctors) psychologists, optometrists, podiatrists, and speech-language pathologists. Id. § 404.1513(a)(1)-(5) (effective Sept. 3, 2013 to Mar. 26, 2017). The regulations note that, "[i]n addition to evidence from acceptable medical sources [the Commissioner] may also use evidence from other sources to show the severity of [a claimant's] impairment(s) and how it affects [his or her] ability to work." Id. § 404.1513(d) (emphasis added). "Other sources" include "[m]edical sources not listed in paragraph (a) of . . . section" 404.1513, such as PAs. Id. at § 404.1513(d)(1).

PA Moore opined that plaintiff was able "sit and stand/walk" for six hours in an eight-hour workday. T. at 452. She further opined that plaintiff was able to "lift and carry" 10 lbs. or less "[o]ccasionally" but could "never" lift 20 lbs. or 50 lbs. "in a competitive work situation." Id. Moreover, PA Moore opined that, in an eight-hour workday, plaintiff could "[g]rasp, [t]urn[, and] [t]wist [o]bjects" with her right and left hand 20% of the time; perform "[f]ine [m]anipulations" with both hands for 30% of the time; and "reach," "inc[luding o]verhead," 100% of the time. Id. PA Moore concluded that plaintiff's bilateral hand pain would "interfere with attention and concentration needed to perform even simple tasks" and would preclude plaintiff from working as a nurse's assistant. Id. at 453.

The ALJ noted that PA "Moore [wa]s not an acceptable medical source," but considered her medical source statement and afforded her opinion "some weight" because her conclusion that plaintiff could no longer work as a nurse's assistant was "consistent with the conclusions reached in [the ALJ's] decision." T. at 39. The Court finds that the ALJ properly considered PA Moore's opinion and afforded it the

appropriate amount of weight.  As discussed in detail in subsection V.B.1., _supra_, the ALJ properly declined to adopt the limitations set forth in PA Moore's medical source statement in reaching his RFC determination, such as the inability to lift 20 lbs. and the significant limitations in grasping and fine manipulations, because those limitations were "not supported by other objective medical evidence in the record" and contradicted by other medical evidence of record.  King v. Comm'r of Soc. Sec., 350 F. Supp. 3d 277, 284 (W.D.N.Y. 2018); see Harrison v. Colvin, No. 3:13-CV-835 (FJS/CFH), 2014 WL 4794406, at *15 (N.D.N.Y. Sept. 25, 2014) (holding that the ALJ properly considered the opinion of a treating PA and declined to afford it controlling weight where the PA's opinion was "not supported by substantial evidence" and contradicted other medical evidence of record.).

### 3. The ALJ's Assessment of Plaintiff's Credibility

In addition, insofar as plaintiff's pro se brief may be read as arguing that the ALJ improperly declined to credit her statements concerning the intensity, persistence, and limiting effects of her hand and wrist disorders, the Court concludes that the ALJ applied the appropriate legal standard and correctly concluded that statements in this regard were "not substantiated or corroborated by the medical evidence of record."  T. at 37.

A plaintiff's allegations of pain and functional limitations are "'entitled to great weight where . . . it is supported by objective medical evidence.'"  Rockwood v. Astrue, 614 F. Supp. 2d 252, 270 (N.D.N.Y.2009) (quoting Simmons v. U.S. R.R. Ret. Bd., 982 F.2d 49, 56 (2d Cir. 1992)).  However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the

credibility of the [plaintiff's] testimony in light of the other evidence in the record."  Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks and citation omitted). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief."  Rockwood, 614 F. Supp. 2d at 270 (internal quotation marks and citation omitted).

"The ALJ's credibility assessment must be based on a two[-]step analysis of pertinent evidence in the record.  First, the ALJ must determine whether the claimant has medically determinable impairments, 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  Rockwood, 614 F. Supp. 2d at 270-71 (quoting 20 C.F.R. § 404.1529(a)); accord 20 C.F.R. § 416.929(a)).

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work.  Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

Id. at 271 (internal quotation marks and citations omitted); see 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).  Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's

24

symptoms." Cichocki v. Astrue, 534 F. App'x 71, 75 (2d Cir.2013) (summary order) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

Here, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but concluded that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not fully credible because "they [we]re . . . not substantiated or corroborated by the medical evidence of record." T. at 37. The ALJ observed plaintiff's hearing testimony in which she stated that she experienced pain in both hands, but that she "take[s] . . . nothing for pain" and that her last treatment for hand pain was in July 2017 when she was unable to receive another steroid injection because of the fracture she sustained punching a wall. T. at 72; see id. at 70. Further, the ALJ observed that plaintiff testified that "[t]he ache is always there. That's not the problem. I can deal with that. It's when I start using my hand, turning my wrist, trying to lift anything or hold on to anything that the pain it'll have sharp pains." Id. at 77. The ALJ noted that plaintiff's activities of daily living consisted of cleaning her trailer home, including sweeping and doing dishes, but not vacuuming because that "tends to hurt [her] hands," id. at 75, and that she testified that she can dress herself, except that she avoids buttons and zippers, cooks, walks her dog, and watches television. See id. at 76-77. In addition, plaintiff testified that, due to her bilateral hand pain, she has "kind of adjusted the way [she] do[es] things." Id. at 80.

Here, the ALJ thoroughly discussed plaintiff's subjective complaints, including her hearing testimony that she did not use pain medication or attend treatment, considered her activities of daily living, and properly concluded that her subjective complaints were not supported by the record. See T. at 37-39. For example, plaintiff's statements

regarding her limitations with lifting were not supported by her ability to clean, care for herself and walk her dog.  See Cichocki v. Astrue, 729 F.3d 172, 178 (2d Cir. 2013) (finding the ALJ properly relied on plaintiff's activities of daily living, including the ability to walk dogs and clean her home, were consistent with an RFC to perform light work). In addition, as discussed in detail in subsection V.B.1, supra, the ALJ correctly determined that plaintiff's subjective complaints were not supported by the medical evidence of record.  Accordingly, the ALJ's credibility determination was supported by substantial evidence.

### 4. Plaintiff's New Evidence[8]

Contrary to plaintiff's contention, the newly submitted evidence does not "alter[] the weight of the evidence before the ALJ" such that remand is required to determine a new RFC.  Canady, 2017 WL 5496071, at *11; see Patterson, 24 F. Supp. 3d at 373. As new evidence, plaintiff submitted two follow-up notes from her 2015 left thumb arthroplasty surgery authored by Dr. Arliss, her hand surgeon.  See T. 14-18.  In his first note from January 29, 2015, 10 days after surgery, Dr. Arliss observed that plaintiff "present[ed] with left wrist pain which is gradually decreasing."  Id. at 14.  Dr. Alriss performed a physical exam and noted that plaintiff's "[l]eft wrist [was] normal to inspection and palpation with the exception of a nicely healed intact 5cm wound at the dorsal base of the left thumb and wrist," and that plaintiff was able to "move the thumb MP and IP joints well" and had "full ROM" in her left wrist."  Id. at 15.  In addition, Dr.

---

[8]  The Commissioner correctly argues that various documents plaintiff submitted to the AC are not new, as they were included in the record before the ALJ.  See Dkt. No. 14 at 16-17.  However, given the scope of review of, as explained in subsection V.A., supra, the Court concludes that the fact that some of plaintiff's purportedly new evidence was previously considered is of no moment for the present analysis.

Arliss observed that plaintiff had 5/5 strength in her left extensors, flexors, and forearm pronators and supinators, and tested "negative for the Carpal tunnel bilaterally." Id. Moreover, plaintiff submitted Dr. Arliss' note from her March 12, 2015 follow-up appointment seven weeks after surgery in which Dr. Arliss observed that plaintiff "complain[ed] of pain . . . but [wa]s off narcotic medication" but was taking "quite a bit of Motrin," and was "not working but [wa]s busy at home helping care for a grandchild." Id. at 17.  Upon physical exam, Dr. Arliss found that plaintiff's left wrist was "stiff insofar wrist movement as well as thumb," but noted that plaintiff's "ROM [was] physiologic" and that plaintiff's "hands [were] normal to inspection and palpation" with "[s]trength 5/5 bilaterally" and "physiologic" ROM." Id. at 18.  Dr. Arliss also observed that plaintiff's "[f]ingers [w]ere normal to inspection and palpation" with "[f]ull ROM" except the stiffness in her left thumb. Id.

Further, plaintiff submitted Dr. Llobert's June 22, 2017 medical source statement, which states that plaintiff has pain in both hands "due to arthritis" which causes her hands to "shake" and "tremble." T. at 84.  Dr. Llobet opined that plaintiff was able to stand or walk for eight hours of an eight-hour workday and sit for four. See id. at 85.  In response to the questionnaire's inquiry as to "[h]ow many pounds can your patient lift and carry in a competitive work situation?" Dr. Llobert circled the marks for indicating "[n]ever" for at least 10 lbs., 20 lbs., and 50 lbs. Id. at 85.[9]  Moreover, Dr. Llobet indicated that plaintiff did not "have significant limitations with reaching, handling or fingering." Id.  In addition, Dr. Llobet opined that, in an eight-hour workday, plaintiff

---

[9]  The Court notes that, because Dr. Llobet circled numerous options instead of checking the spaces designated on the form, it is uncertain whether he also meant to circle the mark for selecting "never" with respect to plaintiff's ability to lift "[l]ess than 10 lbs." T. at 85.

could "[g]rasp, [t]urn[, and] [t]wist [o]bjects" with her right and left hand 10% of the time; perform "[f]ine [m]anipulations" with both hands for 80% of the time; and "reach," "inc[luding o]verhead," 100% of the time.  Id.  Dr. Llobet also opined that plaintiff would "frequently" experience pain or other symptoms severe enough to interfere with the attention and concentration necessary to do simple tasks, and selected options to indicate that plaintiff would be absent from work "[a]bout two days per month" and "[a]bout three days per month."  Id. at 86.

Plaintiff's newly submitted evidence also includes follow-up progress notes from Bassett Healthcare Network.  Her June 12, 2017 progress note, authored five days after her surgery to repair the boxer's fracture she sustained after she punched a wall, provides, as relevant here, plaintiff's "x-rays . . . show healing of her fracture," "hand is neurovascularly intact," and that "[s]he has some arthritis in her hand, but her fingers are very stiff."  Id. at 60.  Her June 21, 2017 progress note also indicates that plaintiff's "splint was removed and x-rays were taken that show healing of her fracture.  The patient's hand is neurovascularly intact.  She has some arthritis in her hand, but her fingers are very stiff."  Id.  Moreover, her June 11, 2018 progress note, authored by Dr. Reis, states that, along with her bilateral hand pain, plaintiff had a "new complaint" of "tightness in her volar forearm."  Id. at 60.  Dr. Reis noted that, although plaintiff had not had any "diagnostic testing," she "certainly could be developing some carpal tunnel syndrome which could explain some of her issues."  Id.  Dr. Reis concluded that he "ha[d] nothing to offer [plaintiff] for her hand pain" and that he believed "EMGs [should be] ordered prior to any further treatment options."  Id.

Finally, plaintiff submitted Dr. Lazaro's December 10, 2018 report containing the results electrodiagnostic imaging of plaintiff's "sensory and motor symptoms in the hands and wrists."  T. at 20.  Dr. Lazaro's report states that plaintiff had "no radicular symptoms," and provided the following "[s]ummary of [f]indings: [b]ilaterally normal median, ulnar[,] and radial nerve conduction studies, proximally and distally."  Id. at 21.  In addition, Dr. Lazaro stated that plaintiff's "symptoms (aches, pain[,] and local tenderness) are generated primarily from tendons and ligaments"; [t]here are no clinical signs of cervical radiculopathy or plexopathy."  Id.

First, contrary to plaintiff's contention, even considering Dr. Llobet's medical source statement, substantial evidence still supports the ALJ's RFC determination.  See Dkt. No. 12 at 4-5.  Dr. Llobet's opinion that plaintiff's arthritis causes her hands to "shake" and "tremble" is uncorroborated by any other medical evidence of record.  T. at 84.  Similarly, Dr. Llobet's opinion that plaintiff has significant limitations in her ability to grasp and twist objects with her hands, and that she is unable to lift any amount of weight, is contrary to the weight of the evidence and unsupported by any other medical evidence of record which established that plaintiff had at least 4+/5 or 5/5—nearly full grip strength—and full ROM bilaterally.  See id. at 85.[10]  Further, Dr. Llobet's opinion that plaintiff's bilateral wrist and hand pain would interfere with her concentration and

---

[10]  To the extent that Dr. Llobet's belated medical source statement is unsupported by and/or inconsistent with the record evidence, including his own clinical findings, the Court concludes that, insofar as plaintiff's pro se pleading may be read as arguing that Dr. Llobet's opinion is entitled to controlling weight pursuant to the treating physician rule, that argument lacks force.  See 20 C.F.R. § 404.1527(c)(2); id. § 416.927(c)(2); see also Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000) (stating that the "treating physician rule . . . mandates that the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence."); Jill D. v. Berryhill, 5:17-CV-1308 (CFH), 2019 WL 936523, at *3 (N.D.N.Y. Feb. 26, 2019) ("[The treating physician] rule applies equally to retrospective opinions given by treating physicians.") (internal quotation marks and citation omitted)).

attention and cause her to be absent from work two or three days per month is not contradicted by plaintiff's hearing testimony in which she explicitly stated that she did not need to take medication for pain and was not attending therapy or seeking treatment for her pain; and inconsistent with her activities of daily living, including her ability to care for her grandchild, walk her dog, and cook and clean in her home.  See id. at 84-85.  Moreover, Dr. Arliss' 2015 progress notes and the progress notes relating to her June 2017 boxer's fracture surgery are consistent with the ALJ's analysis of plaintiff's medical records used in reaching the RFC determination, including that plaintiff has 5/5 bilateral hand and wrist strength, full ROM, and showed signs of carpal tunnel syndrome and arthritis.  See id. at 14-18, 37-39, 60.  As a final matter, Dr. Lazaro's December 2018 findings relating to plaintiff's electrodiagnostic testing, which show normal nerve conduction studies and posit that plaintiff's pain is generated from tendons and ligaments is of no moment, as it does not call into question the degree of disability caused by plaintiff's pain and, therefore, does not impact the ALJ's RFC determination. In any event, as the AC observed, Dr. Lazaro's report discussed his findings that were obtained outside of the relevant time period for plaintiff's disability application and, therefore, does not have any effect on the ALJ's determination.  See T. at 2.  Thus, because the ALJ's RFC determination was supported by substantial evidence, and plaintiff has failed to establish a "reasonable possibility that the new evidence would have influenced the [ALJ] to decide claimant's application differently," the ALJ's determination is affirmed.  Patterson, 24 F. Supp. 3d at 373 (internal quotation marks and citation omitted)).

## VI. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED**, that plaintiff's motion (Dkt. No. 12) is **DENIED** and it is further

**ORDERED**, that the Commissioner's motion (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 5, 2020
      Albany, New York

_Christian F. Hummel_
Christian F. Hummel
U.S. Magistrate Judge